﻿Citation Nr: 18106792
Decision Date: 05/31/18 Archive Date: 05/31/18

DOCKET NO. 11-20 892
DATE: May 31, 2018
ORDER
Entitlement to service connection for diabetes mellitus, type II, is denied.
FINDING OF FACT
Diabetes mellitus, type II, is not shown to be causally or etiologically related to any disease, injury, or incident in service and did not manifest within one year of the Veteran’s service discharge. 
CONCLUSION OF LAW
The criteria for service connection for diabetes mellitus, type II, have not been met. 38 U.S.C. §§ 1101, 1110, 1112, 1131, 1137; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.
REASONS AND BASES FOR FINDING AND CONCLUSION
The Veteran served on active duty from February 1989 to February 1992. 
This matter comes before the Board of Veterans’ Appeals (Board) on appeal from a March 2010 rating decision issued by a Department of Veterans Affairs (VA) Regional Office (RO). 
In August 2014, the Veteran testified at a Board hearing before the undersigned Veterans Law Judge. A transcript of the hearing is associated with the record. In January 2015, the Board remanded the case for further development and it now returns for further appellate review. 
The Veteran was previously represented by a private attorney in his appeal; however, such attorney withdrew from representation in August 2017. In February 2018, the RO notified the Veteran of his attorney’s withdrawal and provided him with an opportunity to elect a new representative. However, to date, the Veteran has not done so. Therefore, he is unrepresented in his appeal. 
The Board notes that additional VA treatment records have been associated with the record since the February 2018 supplemental statement of the case. However, the Board finds that such records are not relevant to the Veteran’s claim for service connection for diabetes mellitus, type II. Therefore, there is no prejudice to the Veteran in the Board proceeding with a decision at this time.
Entitlement to service connection for diabetes mellitus, type II.
Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303(a). Service connection may also be granted for any disease diagnosed after discharge, when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). Direct service connection may not be granted without evidence of a current disability; in-service incurrence or aggravation of a disease or injury; and a nexus between the claimed in-service disease or injury and the present disease or injury. Id.; see also Caluza v. Brown, 7 Vet. App. 498, 506 (1995) aff’d, 78 F.3d 604 (Fed. Cir. 1996) [(table)].
Where a veteran served for at least 90 days during a period of war or after December 31, 1946, and manifests certain chronic diseases, such as diabetes mellitus, to a degree of 10 percent within one year, from the date of termination of such service, such disease shall be presumed to have been incurred or aggravated in service, even though there is no evidence of such disease during the period of service. 38 U.S.C. §§ 1101, 1112, 1137; 38 C.F.R. §§ 3.307, 3.309. 
Alternatively, when a disease at 38 C.F.R. § 3.309(a) is not shown to be chronic during service or the one year presumptive period, service connection may also be established by showing continuity of symptomatology after service. See 38 C.F.R. § 3.303(b). However, the use of continuity of symptoms to establish service connection is limited only to those diseases listed at 38 C.F.R. § 3.309(a) and does not apply to other disabilities which might be considered chronic from a medical standpoint. See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). 
When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).
The Veteran contends that diabetes mellitus, type II, first manifested in service as weight gain, urinary problems, excessive thirst and dry mouth, fatigue, and skin infections. In the alternative, he alleges that his diabetes is related to his in-service exposure to hazardous substances, to include a nerve agent antidote. 
As an initial matter, the Board notes that, in June 1996, a formal finding with respect to the unavailability of the Veteran’s service treatment records (STRs) was issued, indicating that no response was received when such records were requested and that telephone calls did not produce the service treatment records. Thus, it was concluded that the Veteran’s service treatment records were unavailable and further efforts to obtain them would be futile. In a May 2004 statement, the Veteran provided further information about his treatment while in service. Specifically, he reported that he was treated at Fort Leonard Wood, Missouri, from January 1989 to June 1989, at Fort Benning, Georgia, in June 1989, and at Fort Stewart, Georgia, from June 1989 to June 1990. He also noted that he was a part of the Alpha Company, 35th Engineer Battalion, the Delta Company, 23rd Battalion, and the Bravo Company, 18th Parachute Infantry Regiment. Another attempt to obtain the Veteran’s service treatment records was made, resulting in an October 2008 formal finding of the unavailability of mental health treatment records from the treatment places listed above. However, there was no indication that medical treatment records, specifically those related to the Veteran’s claimed diabetes, were requested. 
Therefore, the Board remanded the case in January 2015 in order to obtain any outstanding STRs. In this regard, an attempt to obtain the Veteran’s STRs was made, resulting in a February 2017 formal finding of the unavailability of treatment records from the providers listed above and determining that further attempts would be futile. 
Consequently, the Board finds that the AOJ exhausted all efforts to locate the Veteran’s complete STRs with negative results. In cases such as these, VA has a heightened duty to explain its findings and conclusions and to consider carefully the benefit of the doubt rule. 38 U.S.C. § 5107 (b); O’Hare v. Derwinski, 1 Vet. App. 365, 367 (1991). However, there is no presumption, either in favor of the claimant or against VA, arising from missing records. See Cromer v. Nicholson, 19 Vet. App. 215, 217-18 (2005) (the United States Court of Appeals for Veterans Claims (Court) declined to apply an “adverse presumption” where records have been lost or destroyed while in Government control which would have required VA to disprove a claimant’s allegation of injury or disease in service in these particular cases). Moreover, the case law does not lower the legal standard for proving a claim for service connection but rather increases the Board’s obligation to evaluate and discuss in its decision all the evidence that may be favorable to the veteran. Russo v. Brown, 9 Vet. App. 46 (1996).
The evidence of the record shows that the Veteran currently has diabetes mellitus, type II. Specifically, a March 2017 VA examination noted that the Veteran was first diagnosed with diabetes mellitus, type II, in 2009. 
The Veteran’s available STRs are negative for a diagnosis of diabetes mellitus, to include upon his separation from service. Additionally, a September 1990 STR noted that the Veteran had not lost any weight despite an increase in his physical training. In December 1990, dysuria was noted. A July 1991 note indicates that he was exposure to a nerve agent antidote and toxic fumes of burning oil well fires while in Southwest Asia from February 1991 to April 1991. A January 1992 note indicates that a urinalysis was negative for glucose. In a report of medical history dated February 1992, the Veteran reported weight gain. Shortly after service, a March 1996 VA examiner encouraged the Veteran to be evaluated for incipient diabetes. 
Consequently, the only remaining inquiry is whether the Veteran’s diabetes is related to his military service, to include his in-service symptoms of weight gain, urinary problems, excessive thirst and dry mouth, fatigue, and skin infections, or his in-service exposure to hazardous substances, to include a nerve agent antidote.
In this regard, the Veteran was afforded a VA examination in March 2017 in order to determine the etiology of his diabetes. At such time, the examiner noted that the Veteran had diabetes that was first diagnosed in 2009 when his hemoglobin A1c was found to be 11.6, with a very high blood sugar level. The examiner concluded that the onset of the Veteran’s diabetes was less likely than not during or related to his active military service, including in-service symptoms of weight gain, urinary problems, excessive thirst, dry mouth, fatigue, and skin infections. As rationale, the examiner explained that the Veteran’s in-service lab results did not support a diagnosis of diabetes. She continued that, although the STRs did not show any blood tests for glucose or hemoglobin A1c, the Veteran had a urinalysis done in January 1992 and, if the in-service symptoms reported by him were due to diabetes, the urinalysis would have been positive for glucose. She further explained that glucose has to do with the impact of hyperglycemia on the kidneys and, when the serum glucose concentration is too high for the kidneys to process, glucose starts spilling into the urine (glycosuria). Moreover, glycosuria typically occurs at serum glucose concentrations greater than 180 mg/dL and the presence of glucose in the urine causes an osmotic diuresis, which leads to symptoms like frequent urination, increased thirst, dry mouth, and fatigue. Therefore, if Veteran’s symptoms of urinary problems, excessive thirst, dry mouth, and fatigue were due to diabetes, his urinalysis should have been positive for glucose. She concluded that, the fact that Veteran’s January 1992 urinalysis was negative for glucose strongly suggests that his symptoms were due to etiologies other than diabetes.
The VA examiner also explained that many of the symptoms associated with diabetes can be seen with other conditions, thus, the diagnosis of diabetes cannot be made on symptoms alone. She further explained that VA follows the American Diabetes Association (ADA) criteria for the diagnosis of diabetes, and ADA criteria requires some form of laboratory testing for the diagnosis of diabetes. In this regard, the criteria for a diagnosis of diabetes is hemoglobin A1c greater than or equal to 6.5; fasting plasma glucose greater than or equal to 126 mg/dL; two-hour plasma glucose greater than or equal to 200 mg/dL; or random plasma glucose greater than or equal to 200 mg/dL in a patient with classic symptoms of hyperglycemia or hyperglycemic crisis. Therefore, she concluded that, although some conditions such as tinea and urinary tract infections may be more common in patients with diabetes, the mere presence of those conditions did not establish a diagnosis of diabetes. 
Finally, the examiner noted that the Veteran’s interval lab tests did not meet the diagnostic criteria for diabetes until 2009, which was 17 years after he left the military. The examiner explained that, if the onset of the Veteran’s diabetes was in fact during service, then one would expect labs from the 1990s up until 2009 to show diabetes; however, this was not the case. She further noted that his glucose readings were completely normal in September 1996, February 1998, October 2001, and November 2005; his urinalyses were negative for glucose in February 1996, September 1996, October 2001, and November 2005; and his glucose readings were greater than 100 but less than 126 in February 1996, August 2001, and October 2005. Consequently, the first clear evidence of diabetes on lab work is not until June 2009, when his hemoglobin A1c was 11.6 and he had a high blood sugar level. Based on ADA diagnostic criteria and review of all available medical records, the examiner concluded that the Veteran’s diabetes indisputably began in 2009 and not back in the 1990s.
Additionally, the examiner opined that the Veteran’s diabetes was less likely than not related to his in-service exposure to hazardous substances, including pyridostigmine bromide, sarin, and cyclosarin. As rationale, she explained that pyridostigmine bromide, sarin, and cyclosarin are not known to cause hyperglycemia or diabetes. Moreover, pyridostigmine bromide, which was administered to Veteran when he served in Southwest Asia, is an acetylcholinesterase inhibitor used as treatment for myasthenia gravis and as an antidote to nerve agents; thus, hyperglycemia and diabetes are not recognized side effects of the medication. Similarly, sarin and cyclosarin have not been associated with hyperglycemia or diabetes in the medical literature; however, the compounds are organophosphates, which primarily affect the nervous system.
Moreover, the examiner explained that the Veteran’s diabetes was due to his weight gain after leaving the service. She stated that, when he left the service in 1992, his weight was 200 pounds. However, by 1997, he weighed 250 pounds, and by 2001, he was over 300 pounds. Moreover, his body mass index (BMI) had been greater than 40 (and sometimes greater than 50) since 2001. A BMI greater than 40 is known as class III obesity (also referred to as severe, extreme, or massive obesity). Additionally, she explained that diabetes is strongly associated with obesity in all ethnic groups. In fact, over 80 percent of the cases of diabetes can be attributed to obesity. Given the strong association of diabetes with obesity and the fact that Veteran’s BMI had been greater than 40 since 2001, the examiner concluded that the Veteran’s diabetes was due to his weight gain after leaving the service and not due to exposure to any hazardous agents.
The examiner further opined that it was less likely than not that the Veteran’s diabetes manifested within one year of his separation from service in February 1992. As rationale, she explained that the Veteran’s interval lab tests did not meet the diagnostic criteria for diabetes until 2009. She again explained that his glucose readings were completely normal in September 1996, February 1998, October 2001, and November 2005; his urinalyses were negative for glucose in February 1996, September 1996, October 2001, and November 2005; and his glucose readings were greater than 100 but less than 126 in February 1996, August 2001, and October 2005. Consequently, the first clear evidence of diabetes on lab work is not until June 2009, when his hemoglobin A1c was 11.6 and his blood sugar level was high. Therefore, the examiner concluded that the Veteran’s diabetes indisputably began in 2009, which was 17 years after he was discharged from service.
The Board accords great weight to the March 2017 VA examiner’s opinion as it considered all of the pertinent evidence of record, to include the statements of the Veteran, and provided a complete rationale, relying on and citing to the records reviewed. Moreover, the examiner offered clear conclusions with supporting data as well as reasoned medical explanations connecting the two. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 301 (2008) (stating that a medical examination report must contain not only clear conclusions with supporting data, but also a reasoned medical explanation connecting the two); see also Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007) (stating that a medical opinion must support its conclusion with an analysis that the Board can consider and weigh against contrary opinions). Importantly, there is no medical opinion of record to the contrary.
The Board notes that the Veteran has contended that his diabetes is related to his service, to include his in-service symptoms of weight gain, urinary problems, excessive thirst and dry mouth, fatigue, and skin infections, or his exposure to hazardous substances, to include a nerve agent antidote. The Veteran, as a layperson, is certainly competent to report matters within his personal knowledge, such as the occurrence of an injury or event, or his own symptoms. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007); Buchanan v. Nicholson, 451 F.3d 1331, 1336 (Fed. Cir. 2006). However, in the instant case, the Board finds that the question regarding the potential relationship between diabetes and any instance of his service to be complex in nature. See Woehlaert v. Nicholson, 21 Vet. App. 456 (2007) (although the claimant is competent in certain situations to provide a diagnosis of a simple condition such as a broken leg or varicose veins, the claimant is not competent to provide evidence as to more complex medical questions). 
In this regard, while the Veteran is competent to describe his current manifestations of his diabetes, as well as his history of claimed symptoms, the Board accords such statements regarding the etiology of such disorder little probative value as he is not competent to opine on such complex medical questions. Specifically, where the determinative issue is one of medical causation, only those with specialized medical knowledge, training, or experience are competent to provide evidence on the issue. See Jones v. Brown, 7 Vet. App. 134, 137 (1994). In this regard, the diagnosis of diabetes requires the administration and interpretation of diagnostic testing. There is no indication that the Veteran possesses the requisite medical knowledge regarding such matters. Moreover, the Veteran has offered only conclusory statements regarding the relationship between his in-service complaints and his current diabetes. Therefore, the Board affords the Veteran’s statements as to the etiology of his diabetes no probative weight.
The Board has also considered whether service connection is warranted on a presumptive basis, to include on the basis of a continuity of symptomatology. In this regard, the clinical evidence of record fails to show that the Veteran manifested diabetes to a degree of 10 percent within the one year following his discharge from active duty service in February 1992. In this regard, as explained by the March 2017 VA examiner, his urine was negative for glucose in January 1992. Additionally, lab tests did not meet the diagnostic criteria for diabetes until June 2009, when his hemoglobin A1c was 11.6 and he had a high blood sugar level. Consequently, while the Board has considered the Veteran’s statements regarding a continuity of symptomatology since service, the contemporaneous evidence fails to demonstrate that his diabetes manifested within his first post-service year, or that his reports of symptoms since service have been related to a diagnosis of diabetes within the first post-service year. As such, presumptive service connection, to include on the basis of continuity of symptomatology, is not warranted for diabetes. 38 U.S.C. §§ 1101, 1112, 1137; 38 C.F.R. §§ 3.307, 3.309; Walker, supra. 
Therefore, based on the foregoing, the Board finds that the Veteran’s diabetes mellitus, type II, is not shown to be causally or etiologically related to any disease, injury, or incident during service, and did not manifest within one year of the Veteran’s service discharge. As such, service connection for such disorder is not warranted. 
In reaching the foregoing conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the Veteran’s claim for service connection for diabetes mellitus, type II, that doctrine is not applicable in the instant appeal, and his claim must be denied. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; Gilbert, supra.
 
A. JAEGER
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD Brennae L. Brooks, Associate Counsel